UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REVERSE MORTGAGE SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN PORTFOLIO MORTGAGE CORPORATION, <br><br> Defendant. | Case No. 1:20-cv-03224 <br><br> Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

This dispute arises from a reverse mortgage loan purchase agreement between Plaintiff Reverse Mortgage Solutions, Inc. and Defendant American Portfolio Mortgage Corporation. Plaintiff filed a single-count complaint alleging that Defendant breached the representations and warranties provision of the agreement and constructively denied Plaintiff's repurchase and indemnity demand. [1]. Defendant disputes that Plaintiff asserts a claim for breach of the indemnity provisions and argues that any claims arising from the agreement are time-barred. The parties cross move for summary judgment, [87], [90]. For the reasons stated below, the Court grants Plaintiff's motion for summary judgment, [90], and denies Defendant's motion for summary judgment, [87].

I.  Background[1]

The dispute in this case involves a reverse mortgage loan purchase agreement between Plaintiff Reverse Mortgage Solutions, Inc. and Defendant American Portfolio Mortgage Corporation. [86] ¶ 11. On January 19, 2012, Defendant made a home equity conversion mortgage loan to Donald Celmer that was secured by a home equity conversion mortgage. *Id.* ¶ 7. In February 2012, Defendant sold that loan to Plaintiff for $101,199.63, and on September 19, 2014, the parties entered into a reverse mortgage loan purchase agreement, which governs the loan. *Id.* ¶¶ 7–9.

In the agreement, Defendant made certain representations and warranties regarding the loan. *See* [86-7] at 17–28. The agreement also set forth Defendant's indemnity and repurchase obligations, which include the following provisions:

> Section 6.1 **Indemnification**. In addition to any other rights and remedies that Purchaser may have, Seller shall indemnify and hold Purchaser...harmless from and against, and shall reimburse it or them for, any repurchase demand by an Investor, any losses (including pair-off fees and loss of Servicing Rights), damages, deficiencies, claims, causes of action or expenses of any nature (including attorney's fees) incurred before, on or after any Closing Date to the extent related to the following...: [including, among other things, breaches of representations or warranties in the Reverse Mortgage Loan Purchase Agreement]
>
> Section 6.2 **Cure or Repurchase of Reverse Mortgage Loans**. In the event there exists a basis to demand indemnification under Section 6.1 hereof with respect to any Reverse Mortgage Loan, in addition to any other rights and remedies that Purchaser may have, Purchaser may demand that Seller either cure such breach or repurchase the Reverse Mortgage Loan, including the Servicing Rights, or related Mortgaged Property from Purchaser or the applicable Investor or Insurer. Seller shall have thirty (30) days to sure any breach which is susceptible of cure....The Purchaser's right to demand and require Seller to repurchase

---

[1] The Court takes the following facts from the parties' Local Rule 56.1(a)(3) Joint Statement of Material Facts and the exhibits attached thereto. [86].

> one or more Reverse Mortgage Loans under this Section 6.2 shall be in addition to any other rights and remedies that Purchaser may have under this Agreement or by law.

[86-7] at 33.

Defendant acquired title insurance through Specialty Title Services Inc., engaging Chicago Title and Trust Company as its underwriter for the loan. [86] ¶ 12. The title policy issued by Chicago Title failed to list an ad valorem tax sale from 2009, which was purchased from Sabre Investments, LLC. *Id.* ¶ 13. Both parties were unaware of the 2009 ad valorem tax sale, and it did not appear on the title commitment or the title policy. *Id.* ¶ 14.

In October 2013, Sabre sent a petition to Defendant for the issuance of the tax deed to obtain title to the property free and clear of any liens. *Id.* ¶ 15. Defendant did not respond to the petition filed by Sabre and did not provide Plaintiff notice of the lawsuit. *Id.* ¶ 16. On June 12, 2014, Sabre obtained the tax deed to the property. *Id.* ¶ 17.

In December 2014, Plaintiff discovered the sale of the tax deed to Sabre. *Id.* ¶ 18. On December 22, 2014, Plaintiff filed a claim with Chicago Title to remedy the title defect. *Id.* ¶ 19. Plaintiff recovered $4,763.50 from Chicago Title for the title defect on May 6, 2016, but Chicago Title denied further liability because it was not notified when Sabre filed the petition for tax deed. *Id.* ¶ 20. On May 31, 2016, Plaintiff repurchased the loan from Government National Mortgage Association for $125,775.41. *Id.* ¶ 22.

On March 15, 2019, Plaintiff made an initial demand to Defendant to indemnify Plaintiff or to repurchase the loan. *Id.* ¶ 23. When Defendant failed to

respond, Plaintiff sued Defendant on March 26, 2020 for breach of contract. *Id.* ¶¶ 23, 24.[2] Thereafter, each party sought the entry of judgment in its favor based upon an agreed set of facts. *See* [87] (Defendant), [90] (Plaintiff). The Court now considers the parties' cross-motions for summary judgment, [87], [90].

## II. Legal Standard

A motion for summary judgment can be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The motion will be granted only if, viewing the record in the light most favorable to the nonmoving party, no jury could reasonably find in the nonmoving party's favor. *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016). In a case involving cross-motions for summary judgment, the Court construes "all inferences in favor of the party against whom the motion under consideration is made." *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004).

## III. Analysis

The Court considers the parties' cross-motions for summary judgment together. The parties agree there are no material factual disputes in this case. *See* [86]. The overarching question is whether Plaintiff has brought a breach of contract

---

[2] Plaintiff originally filed suit in the United States District Court for the Southern District of Texas, Houston Division, and that court transferred the matter here pursuant to 28 U.S.C. § 1404(a). [86] ¶¶ 3, 4.

claim premised upon Defendant's failure to honor its contractual indemnity obligations and, if so, whether that claim is timely.[3]

The parties agree that there exists a valid and enforceable contract, which contains a provision requiring Defendant to indemnify and hold Plaintiff harmless for any repurchase demand made by an investor. [86-15] at 33. Defendant concedes that Plaintiff made a repurchase demand pursuant to this provision, to which Defendant did not respond. [86] ¶ 23. Thus, the parties do not dispute that Defendant had a contractual obligation under the agreement to repurchase the loan or that it failed to do so. Defendant, instead, argues that Plaintiff's claim is for a breach of the representations and warranties provision of the contract, not the indemnity provision. And even if Plaintiff's claim is for Defendant's breach of an indemnity obligation, that claim is untimely because Plaintiff knew of the facts giving rise to the indemnity claim more than four years before filing suit.

As an initial matter, it is clear from the plain language of the complaint that Count I includes a claim for breach of contract based upon Defendant's failure to

---

[3] The Southern District of Texas transferred the case to this Court on June 1, 2020 pursuant to 28 U.S.C. § 1404(a). When a case is transferred pursuant to § 1404(a), the Court must apply the choice of law rules of the transferor court. *See Looper v. Cook Incorporated*, 20 F.4th 387, 390 (7th Cir. 2021) ("When a district court with proper venue transfers a civil case to another district court, the transferee court will apply the choice-of-law rules of the state where the transferor court sits."). Texas courts consider statutes of limitations to be procedural, not substantive, and will apply Texas statutes of limitations in diversity cases. *See Internet Corporativo S.A. de C.V. v. Business Software Alliance, Inc.*, No. Civ.A. H-04-2322, 2004 WL 3331843 at *14 (S.D. Tex. Nov. 15, 2004). Thus, the Court applies Texas' four-year statute of limitations to Plaintiff's breach of contract claim. *See id.* Further, the contract at issue contains a choice of law provision selecting Texas law to govern all disputes arising from the agreement. [86] ¶ 27. Therefore, the Court also finds, and the parties agree, that Texas substantive law governs. *See* [88] at 2; [91] at 2; *see also Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (citing *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002)) ("Texas law gives effect to choice of law clauses regarding construction of a contract.").

indemnify Plaintiff's repurchase of the loan. Count I alleges that: (1) pursuant to the parties' agreement, Plaintiff made an indemnification demand on Defendant; (2) Defendant failed to respond, constructively denying that demand; and (3) as a result of that denial, Plaintiff has suffered damages. [1] ¶¶ 26–28.

Defendant argues that Plaintiff is trying to circumvent the statute of limitations period by recharacterizing its untimely claim for Defendant's breach of the representations and warranties provision as a breach of indemnity obligations. But Texas courts recognize breaches of indemnity clauses as independent breaches of contract, subject to their own statute of limitations period. *See Gano v. Diaz*, No. 03-17-00119-CV, 2018 WL 3150988, at *3 (Tex. App. June 28, 2018) (finding breach of an indemnity obligation is "an independent cause of action" not "derivative of a party's primary cause of action"). Thus, under Texas law, Plaintiff has properly brought a claim for breach of Defendant's indemnity obligations separate from any claim for a breach of the representations and warranties provisions.

Defendant argues that, even if Plaintiff has brought a claim based upon Defendant's indemnity obligations, Plaintiff's claim is either too late (because Plaintiff knew of the facts giving rise to its indemnity claim more than four years ago) or too early (because an indemnity claim does not accrue until a final judgment or settlement). Both theories fail under Texas law.

In *TIB*, a Texas court acknowledged that "a cause of action for contractual indemnification accrues either at the time a judgment is rendered or at the time a judgment is paid. 'As such, an action for indemnification or contribution does not

accrue for limitations purposes until a plaintiff recovers damages or settles its suit against a defendant.'" *TIB v. Canyon Cmty. Bank*, No. 3:13-CV-3913-D, 2014 WL 145284, at *4 (N.D. Tex. Jan. 15, 2014) (quoting *Am. Star Energy & Minerals Corp. v. Stowers*, 405 S.W.3d 905, 915 (Tex. App. 2013)); *see also Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 134 (Tex. 2010) (quoting *Underwriters at Lloyd's of London v. Gilbert Tex. Const., L.P.*, 245 S.W.3d 29, 35 (Tex. App. 2007)) ("A claim based on a contract that provides indemnification from liability does not accrue until the indemnitee's liability becomes fixed and certain.").

The parties agree that Chicago Title denied any liability beyond its $4,763.50 payment to Plaintiff on May 6, 2016 and that Plaintiff repurchased the loan from Government National Mortgage Association on May 31, 2016. Thus, Plaintiff's liability became "fixed and certain" in May 2016. *Gilbert*, 327 S.W.3d at 134; *see also TIB*, 2014 WL 145284, at *4. Based upon Texas' four-year statute of limitations, Plaintiff's claim, which was filed on March 26, 2020, remains timely. *See* [1].

In arguing that Plaintiff's indemnity claim is time-barred, Defendant contends that Plaintiff "knew of indemnity claims it had on December 18, 2014." [102] at 3. But this argument conflates Plaintiff's claim for indemnity under the agreement's indemnity provisions with its claim for indemnity based upon *breach* of those provisions. Had Plaintiff attempted to bring its indemnity claim against Defendant on December 18, 2014, before Plaintiff was required to repurchase the loan and before Plaintiff made a repurchase demand on Defendant under the agreement, its claim would not have been ripe. Plaintiff's claim did not become fixed and certain until, at

the earliest, the date Chicago Title denied further liability and Plaintiff was required to repurchase the loan from Government National Mortgage Association. Texas law undermines Defendant's argument that the claim began accruing as soon as Plaintiff could have made a repurchase demand on Defendant.

Finally, Defendant argues that Plaintiff has been made whole by Chicago Title's payment of $4,763.50 because Plaintiff could have used that payment to redeem the tax deed. [98] at 8. But, as Plaintiff correctly notes, Defendant is essentially arguing that Plaintiff failed to mitigate its damages by not using the money from Chicago Title to repurchase the property itself. Under Texas law, failure to mitigate constitutes an affirmative defense. *See Fabela v. Printz Property Mgmt. LLC*, No. 11-21-00178-CV, 2023 WL 4239857, at *8 (Tex. App. June 29, 2023); *Husaini v. Pawnee Leasing Corp.*, No. 14-20-00415-CV, 2022 WL 1463715, at *3 (Tex. App. May 10, 2022). And, because Defendant did not plead this defense in its answer and instead raised it for the first time in its response to Plaintiff's motion for summary judgment, *see* [27], [98], the defense is waived. *See* Fed. R. Civ. P. 8(c); *see also JPMorgan Chase Bank, N.A. v. Classsic Home Financial Inc.*, 548 Fed.Appx. 205, 208 (5th Cir. 2013) (citing *EEOC v. Serv. Temp Inc.*, 679 F.3d 323, 334 n.30 (5th Cir. 2012)) ("Failure to plead an affirmative defense generally results in its waiver.").

Even if Defendant had not waived a failure to mitigate defense, the defense would still fail on its merits. The burden to prove an affirmative defense remains with the defendant, *Haver v. Coats*, 491 S.W.3d 877, 882 (Tex. App. 2016) ("Ordinarily, the party asserting an affirmative defense has the burden of proof of

both pleading and proving the defense."), and Defendant has failed to establish its defense of failure to mitigate and has failed to point to any disputed material facts that would prevent summary judgment in Plaintiff's favor. To the contrary, the undisputed facts make that clear that Plaintiff did not receive the payment from Chicago Title until nearly two years after Sabre obtained the tax deed. [86] ¶¶ 17, 20. Thus, Defendant has not established that Plaintiff could have cured the title defect upon receiving $4,763.50 from Chicago Title.

## IV. Conclusion

For the reasons stated above, the Court finds that Defendant breached its contractual indemnity obligations, and Plaintiff's claim is timely under Texas law. Thus, the Court grants Plaintiff's motion for summary judgment, [90], and denies Defendant's motion for summary judgment, [87].

The parties shall meet and confer concerning damages and, by October 15, 2023, file a joint status report proposing next steps to resolve any disputes relating to this issue.

Dated: September 22, 2023        Entered:

                                 _____
                                 John Robert Blakey
                                 United States District Judge